# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODD AUGUST, </br></br> Plaintiff, </br></br> v. </br></br> KILOLO KIJAKAZI,[1] </br> Acting Commissioner of Social Security, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 20-412-SRF </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM OPINION[2]

## I.    INTRODUCTION

Plaintiff Todd August ("August") filed this action on March 23, 2020 against defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). August seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's January 27, 2020 final decision denying August's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. Pending before the court are cross-motions for summary judgment filed by August and the Commissioner.[3] (D.I. 20; D.I. 22) August asks the court to remand this case for further administrative proceedings. (D.I. 21 at 23) The Commissioner asks the court to affirm the Administrative Law Judge's ("ALJ") decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.

[2] The parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, and the case was assigned to the undersigned judicial officer on September 1, 2020. (D.I. 10)

[3] The briefing for the present motions is as follows: August's opening brief (D.I. 21), and the Commissioner's combined opening and answering brief (D.I. 23). August waived the right to submit a reply brief. (D.I. 24) The administrative record is docketed at D.I. 12, D.I. 13, D.I. 14, D.I. 15, D.I. 16, and D.I. 17.

(D.I. 23 at 12) For the reasons set forth below, August's motion for summary judgment is GRANTED, and the Commissioner's cross-motion for summary judgment is DENIED.

## II. BACKGROUND

### A. Procedural History

August filed a DIB application on June 27, 2016, claiming a disability onset date of October 5, 2013. (D.I. 12 at 151-52) August's date last insured was December 31, 2014. (*Id.* at 20) His claim was denied initially on January 4, 2017 and again after reconsideration on February 13, 2017. (*Id.* at 74-77, 80-84) A hearing was held before the Administrative Law Judge ("ALJ") on December 17, 2018. (*Id.* at 34-51) On January 3, 2019, the ALJ issued an unfavorable decision, finding that August was not disabled under the Act. (*Id.* at 20-27) The Appeals Council subsequently denied August's request for review on January 27, 2020, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 6)

On March 23, 2020, August initiated this civil action challenging the ALJ's decision that he was not disabled within the meaning of the Act from October 5, 2013 through December 31, 2014. (D.I. 1) On November 19, 2020, August filed a motion for summary judgment. (D.I. 20) The Commissioner filed a cross-motion for summary judgment on November 25, 2020. (D.I. 22)

### B. Medical History

August was born on March 23, 1962 and was fifty-one years old on his claimed disability onset date of October 5, 2013. (D.I. 13 at 25) August graduated from high school and has past relevant work as a hairdresser. (D.I. 12 at 169) The ALJ concluded August's degenerative disc disease of the lumbar spine amounts to a severe impairment. (*Id.* at 22)

August experienced lower back pain in the eighteen months leading up to the claimed disability onset date of October 5, 2013. (*Id.*) At the direction of his primary care physician, Dr.

Thomas Walsh, August underwent an MRI on April 3, 2013 that showed disc extrusions at the L2-L3 and L3-L4 vertebrae, as well as facet inflammation at the L4 vertebra on the left side. (D.I. 15 at 26; D.I. 16 at 64) After his MRI, August visited neuroradiologist Timothy Eckel, who performed a steroid injection at August's L3-L4 level that immediately relieved August's axial back pain. (D.I. 16 at 66-67)

August's lower back pain returned by October 10, 2013, and Dr. Walsh referred him to orthopedic surgeon Stephen Brown. (D.I. 14 at 22-25) Dr. Brown prescribed prednisone and recommended a surgical consultation. (*Id.* at 25) The next day, August visited Dr. Larry Blum for a neurological evaluation. (D.I. 16 at 40) Dr. Blum reported that August's ongoing pain was likely caused by his lumbar radiculopathy. (*Id.*) An examination found August had a normal range of motion and normal strength, reflexes, and gait. (*Id.* at 43) Dr. Blum ordered a CT scan of August's lumbar spine, which showed signs of degenerative disc disease, medial facet hypertrophy, disc bulges, and congenital stenosis. (*Id.* at 48, 68)

On October 21, 2013 August visited neurosurgeon Clifford Solomon and reported that his lower back pain had worsened in frequency, duration, and intensity to the point where he could not work. (D.I. 16 at 45) After reviewing August's scans, Dr. Solomon advised that surgery would likely help as a last resort option to manage the pain. (*Id.*) Dr. Solomon performed the operation without complications on November 6, 2013. (*Id.* at 50-51)

August visited Brian Roeder, PA-C, for a post-surgical appointment on November 27, 2013. (D.I. 16 at 54) Mr. Roeder reported that August was doing well following surgery, and his leg pain had improved. (*Id.* at 53) During a visit with nurse practitioner Kelley Stefancik about a month later, August indicated that he was "feeling 100% better than pre-op" and was "off of all pain medications." (*Id.* at 60) Stefancik authorized August to drive and "begin

3

increasing activity as tolerated," but she advised against lifting more than twenty-five pounds. (*Id.* at 61)

Post-surgery, August began physical therapy to build up his core strength and flexibility. By February 2014, the physical therapist noted increased lumbar range of motion and tolerance to daily activities. (D.I. 16 at 69-70) August reported pain levels ranging between 2/10 and 4/10, with increased pain after long periods of sitting or driving. (*Id.* at 70) August also reported that he had difficulty some days while putting on shoes or socks. (*Id.*)

At a follow-up visit on July 17, 2014, Dr. Solomon reported that August had "really changed his lifestyle since we operated on him," demonstrating a lack of symptoms compared to his condition before the operation. (D.I. 13 at 73) August's back was "well decompressed" with no radiculopathy, and he was able to walk without weakness. (*Id.*) Dr. Solomon reported that he and August were "thrilled with how well he is doing," and he recommended follow-up visits on an as-needed basis. (*Id.*)

In early 2017, two state agency physicians evaluated August's records and determined there was insufficient evidence for the agency to find a disability during the relevant period. (D.I. 12 at 58, 65-66) The records considered by the state agency physicians included only those of Dr. Justin Glasgow, Baltimore Washington Medical Center, and unknown sources post-dating the DIB time period. (*Id.* at 55-57, 63-65) They did not include opinion evidence. (*Id.* at 59, 67)

### C. Hearing Before the ALJ

#### 1. August's testimony

August testified that he previously worked as a full-time hairdresser, which required him to stand on his feet during the workday. (D.I. 12 at 39) August experienced back pain in the

4

years leading up to his surgery, but he continued to work until October 2013, when his symptoms became debilitating. (*Id.* at 40) Although his November 2013 surgery decreased his daily pain by about half, August testified that the surgery did not completely alleviate his pain. (*Id.*)

August explained that he experiences pain when he sits and stands, and he cannot stand without leaning on something for support. (*Id.* at 42-43) To manage the pain, August uses ice packs. (*Id.* at 47) He testified that he exercised using light weights after his back surgery to maintain his mobility. (*Id.* at 47-49) August testified that he can drive short distances and do laundry if he acts with care, but he cannot lift heavy objects, bend down, or perform house cleaning. (*Id.* at 43-45) He can take a shower and dress by himself, with some difficulty. (*Id.* at 46)

### 2. Testimony of the vocational expert

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> [A]ssume an individual of the claimant's age, education, and work history who can perform work at the light exertional level; who can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; who can occasionally balance, stoop, kneel, crouch, and crawl; and who can have occasional exposure to extreme cold, vibration, and hazards. Could this person perform the claimant's past work?

(D.I. 12 at 50) The VE testified that this individual would be able to perform the claimant's past work as a hairdresser. (*Id.*) The ALJ inquired whether there would be any transferable skills from work as a hairdresser if the hypothetical individual were limited to sedentary work, and the VE responded in the negative. (*Id.* at 50-51)

August's attorney asked whether the hypothetical individual would be able to work despite being absent from work two days per month. (*Id.* at 51) The VE testified that consistent absences of two days per month would preclude skilled work. (*Id.*)

### D. The ALJ's Findings

Based on the factual evidence in the record and the hearing testimony, the ALJ determined that August was not disabled under the Social Security Act for the relevant time period of October 5, 2013, the alleged onset date of the disability, through December 31, 2014, the date August was last insured. (D.I. 12 at 20) The ALJ found in pertinent part:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 5, 2013, through his date last insured of December 31, 2014 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, and could have occasional exposure to extreme cold, vibration, and hazards.

6. Through the date last insured, the claimant was capable of performing past relevant work as a hairdresser. This work did not require the performance of work-related activities precluded by the claimant's residual function capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 5, 2013, the alleged onset date, through December 31, 2014, the date last insured (20 CFR 404.1520(f)).

(*Id.* at 22-27)

### III. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2015); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the court must affirm the ALJ's decision if it is supported by substantial evidence. *See id.* at 1190-91.

Substantial evidence is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). As the United States Supreme Court has explained, substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted); *Biestek*, 139 S. Ct. at 1154.

Thus, in the context of judicial review under § 405(g):

> [a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of a claimant's subjective complaints of disabling pain, the ALJ "must consider the subjective pain

and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefits cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without a remand to the [Commissioner] for a rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

The core issue in this case is whether August was disabled within the meaning of the Act at any time from October 5, 2013, the alleged onset date of the disability, through December 31, 2014, the date August was last insured. (D.I. 12 at 37) Title II of the Social Security Act affords insurance benefits "to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 423(a)(l)(D) (2015)). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(l)(A). A claimant is only disabled if his impairments are so severe that he is unable to do his previous work or engage in any other kind of substantial gainful work existing in the national economy. *See id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003). To qualify for disability insurance benefits, a claimant must establish

that he was disabled prior to the date he was last insured. *See* 20 C.F.R. § 404.131 (2016); *Matullo*, 926 F.2d at 244.

The Commissioner must perform a five-step analysis to determine whether a particular claimant has met his burden of establishing disability. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at § 404.1520(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at § 404.1520(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at § 404.1520(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See id.* at § 404.1520(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by

9

his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude him from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating finding of no disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

August asserts two main arguments on appeal: (1) the ALJ failed to provide adequate reasons for affording the medical opinions of Dr. Solomon and Ms. Stefancik "no weight" and the ALJ's RFC finding was therefore inaccurate; and (2) the ALJ's credibility assessment of August is flawed because the ALJ failed to consider plaintiff's lengthy work history. (D.I. 21 at 8-19)

#### 1. Medical opinion evidence

The Third Circuit subscribes to the "treating physician doctrine," which requires a treating medical source's opinion to be given controlling or substantial weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

10

inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *see also* 20 C.F.R. § 404.1527(c)(2). In cases where the treating source opinion is either inconsistent with other substantial evidence or not well-supported by objective medical findings, the opinion may be given less than controlling weight, but it should not be automatically rejected. *See* S.S.R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 660 (D. Del. 2008). Instead, the treating source opinion should be afforded the appropriate amount of deference in accordance with the factors listed in 20 C.F.R. § 404.1527, which include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the opinion, and the specialization of the treating physician. 20 C.F.R. § 404.1527(c).

Although the ALJ may make credibility determinations when the record contains inconsistent or conflicting evidence, the ALJ "cannot reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). Accordingly, the ALJ must provide specific reasons for the weight given to the treating source's medical opinion based on the evidence in the record. S.S.R. 96-2p, 1996 WL 374188, at *5; *see Dass v. Barnhart*, 386 F. Supp. 2d 568, 576 (D. Del. 2005). Otherwise, the reviewing court cannot judge whether "significant probative evidence was not credited or if it was simply ignored." *Fargnoli*, 247 F.3d at 41; *see Simmonds v. Astrue*, 872 F. Supp. 2d 351, 358 (D. Del. 2012); *Gonzalez*, 537 F. Supp. 2d at 660. Importantly, the ALJ may not reject a treating physician's opinion based on "his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

In the case at bar, August alleges that the ALJ failed to provide sufficient reasons for assigning no weight to the opinions of Dr. Solomon and Ms. Stefancik, who established detailed limitations regarding August's disability suggesting he could not meet the exertional requirements of "light work" on a regular and continuing basis. (D.I. 21 at 9-16) Because the ALJ's RFC assessment and the vocational testimony did not account for this evidence, August argues that the ALJ's determination is not supported by substantial evidence. (*Id.* at 11)

In response, the Commissioner contends that the ALJ properly rejected the January and February 2014 opinions of Dr. Solomon and Ms. Stefancik because their subsequent assessments noted marked improvement in August's condition, and their opinions that August could not work are entitled to no special weight because they are not medical opinions. (D.I. 23 at 5-6) According to the Commissioner, the ALJ had no duty to recite each treating source factor in the written decision, and the ALJ properly evaluated the treating source opinions in the context of the medical record. (*Id.* at 6-7)

The record lacks substantial evidence to support the ALJ's decision to give "no weight" to the opinion of August's treating physician, Dr. Solomon. After indicating that he had "considered the opinion evidence in accordance with the requirements of 20 CFR 404.1527," the ALJ gave "no weight to any of the opinions in Exhibit 13F, such as those in 13F/17-19, 13F/28-30/34-35, and 13F/98-100," because "[t]hose opinions are not supported by the overall medical evidence, as the claimant's physical exams consistently show full 5/5 strength and normal station and gait." (D.I. 12 at 23, 26) Exhibit 13F is 215 pages long. (D.I. 16; D.I. 17) The opinions specifically referenced by the ALJ are those of Ms. Stefancik, Dr. Solomon, and vocational

rehabilitation consultant Steven Fresa,[4] respectively. (D.I. 16 at 18-20, 29, 99-101) The ALJ did not discuss the contents of each opinion or distinguish between opinions rendered by treating physicians, medical sources who are not acceptable medical sources, or nonmedical sources.

There is no dispute that Dr. Solomon's opinion is a treating source opinion entitled to deference. (*See* D.I. 23 at 5 n.4) (challenging whether Ms. Stefancik's statement was entitled to deference under the regulations, without presenting a similar challenge to Dr. Solomon's opinion). The ALJ was not obligated to assess Ms. Stefancik's statement under the treating physician doctrine because August's claim was filed in 2016, and nurse practitioners were not considered acceptable medical sources for claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1502(a)(7); 404.1527(c)(2); *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. Dec. 2, 2020) ("For claims filed before March 27, 2017, the treating physician rule did not encompass opinions of a nurse practitioner."). Although Ms. Stefancik's opinion is not entitled to the controlling weight of a treating physician, the same factors under 20 C.F.R. § 404.1527(c) apply to the evaluation of her opinion. 20 C.F.R. § 404.1527(f)(1). The ALJ erred by grouping these opinions together and disposing of them based on the same perfunctory reasoning, with no indication that Dr. Solomon's opinion was given particular consideration under the treating physician doctrine. *See Kathleen R. v. Saul*, 2021 WL 671602, at *5 (W.D.N.Y. Feb. 22, 2021) (finding that the ALJ erred in granting no weight to opinions of different treatment providers where, "rather than separately considering the opinions, [the ALJ] cumulatively addressed them

---

[4] The ALJ's decision cites the opinion of the vocational rehabilitation consultant, Steven Fresa, by page number. (D.I. 12 at 26) Because Mr. Fresa is a nonmedical source, his opinion is not subject to the treating physician doctrine but is nonetheless considered under the factors outlined at § 404.1527(c). 20 C.F.R. § 404.1527(f). The parties did not substantively discuss Mr. Fresa's opinion in the briefing. (D.I. 21 at 4; D.I. 23)

13

in a single paragraph without identifying by name the treatment providers, including Plaintiff's . . . treating physician. . . .").

Moreover, the ALJ gave no consideration to factors such as the nature and length of the treatment relationship and the level of Dr. Solomon's knowledge as a specialist before he concluded that Dr. Solomon's opinion was entitled to no weight. *See Gonzalez*, 537 F. Supp. 2d at 661 (identifying the ALJ's failure to discuss "the necessary factors for determining the weight of a non-controlling treating physician's opinion" as one reason for rejecting the ALJ's decision). The record demonstrates that Dr. Solomon is a neurosurgeon who has treated August since October 2013 and performed his back surgery in November 2013. (D.I. 16 at 45-51) These considerations are particularly important because August claims he is disabled due to his back impairment. (D.I. 12 at 168) The ALJ's failure to address the nature of Dr. Solomon's treating relationship or his specialty precludes a finding that the ALJ's conclusions were supported by substantial evidence. *See Tucker v. Colvin*, 117 F. Supp. 3d 594, 611 (D. Del. 2011) (determining that ALJ's decision to give treating physicians' opinions "little weight" was unsupported by substantial evidence where the ALJ did not address the length of treatment relationship or level of knowledge of the medical source).

The Commissioner argues that the ALJ "discuss[ed] the statements by Dr. Solomon and Ms. Stefancik and cited to substantial evidence contradicting them," and suggested there is "no authority indicating that the ALJ had to recite each factor [under 20 C.F.R. § 404.1527(c)] as a litany." (D.I. 23 at 6) But the ALJ's decision shows that the ALJ did not mention Dr. Solomon or Ms. Stefancik by name, let alone discuss their treatment relationship with August or attribute specific statements to them. (D.I. 12 at 25-26) While there is no requirement that the ALJ recite each of the factors under 20 C.F.R. § 404.1527(c) "as a litany," courts in this district have

suggested that the factors should be expressly discussed by the ALJ if the treating source opinion is to be given less than controlling weight. *See Gonzalez*, 537 F. Supp. 2d at 661 ("[T]he ALJ failed to consider all of the necessary factors before moving from a conclusion that Dr. Gorra's opinion was not entitled to controlling weight to a conclusion that his opinion was not entitled to any significant weight."); *Tucker*, 117 F. Supp. 3d at 611 ("The ALJ is required to consider the length of the treatment relationship as well as the level of knowledge the medical source has about the claimant's impairments."); *Simmonds v. Astrue*, 872 F. Supp. 2d 351, 359 (D. Del. 2012) (holding that, even if the ALJ had articulated a viable basis to discount the treating physician's opinion, "the ALJ did not sufficiently set out the analysis required to decide how much weight to give Dr. Mosley's opinion.").

Although some courts in the Third Circuit have rejected the notion that the ALJ must explicitly spell out the factors under 20 C.F.R. § 404.1527(c), these courts still require the ALJ to articulate enough details to permit a meaningful review of the ALJ's analysis. *See Samah v. Comm'r of Soc. Sec.*, 2018 WL 6178862, at *5-6 (D.N.J. Nov. 27, 2018) (explaining that the ALJ need not "explicitly discuss" each factor in his findings, but must provide sufficient explanation of his evaluation for the court to " . . . meaningfully review whether his reasoning accords with the regulations standards."); *Podvorec v. Berryhill*, 2017 WL 3705062, at *8 (W.D. Pa. Aug. 28, 2017) ("Although the ALJ did not explicitly spell out all of these factors in her decision, it contains enough detail for this Court to meaningfully review it."). This standard has not been met in the present case because the ALJ failed to identify the nature of the opinion sources, discuss the contents of those opinions, or explain how the opinions were contradicted by evidence of August's physical exams. (D.I. 12 at 26)

The Commissioner argues that the ALJ properly found the opinions of Dr. Solomon and Ms. Stefancik "stale in light of Dr. Solomon's more recent statements." (D.I. 23 at 5) But the ALJ made no such finding in discussing the opinion evidence, instead concluding that the opinion was "not supported by the overall medical evidence, as the claimant's physical exams consistently show full 5/5 strength and normal station and gait." (D.I. 12 at 26) Far from drawing a distinction between August's pre- and post-surgery condition, the ALJ's stated reason for discounting Dr. Solomon's opinion acknowledges that August exhibited consistent findings in his physical exams throughout the entire relevant period. (*Compare* D.I. 16 at 43 *with* D.I. 13 at 71-72) (noting 5/5 strength and normal gait both before and after August's surgery). While the ALJ did discuss Dr. Solomon's post-surgery treatment notes from July 2014, he did not attribute the findings to Dr. Solomon or cite these findings as a specific reason for discounting Dr. Solomon's January 2014 post-surgical opinion. (D.I. 12 at 25) The Commissioner's effort to provide a rationale on behalf of the ALJ further highlights the fact that the ALJ's explanation for discounting Dr. Solomon's opinion was insufficient. *See Foster v. Colvin*, 2015 WL 787617, at *6 n.12 (E.D. Pa. Feb. 25, 2015) (rejecting Commissioner's attempt to suggest additional reasons the ALJ afforded a treating physician's opinion only limited weight when those reasons were not mentioned by the ALJ); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 124 (3d Cir. 2000) (rejecting Commissioner's attempt to recharacterize the ALJ's decision "in an effort to make sense of [it].").

Moreover, the ALJ's conclusion that the opinion evidence was not supported by August's physical exams appears to be based on his own speculative inferences from the medical reports. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (concluding that an ALJ may not reject a treating physician's opinions based on his "own credibility judgments, speculation or lay

16

opinion"); *see also Dougherty v. Astrue*, 715 F. Supp. 2d 572, 583 (D. Del. 2010) ("[I]t is improper for an ALJ to disregard a treating physician's medical opinion based solely on his own impression of the record and his evaluation of a claimant's credibility."). Although he relies on the claimant's physical exams, which "consistently show full 5/5 strength and normal station and gait," the ALJ does not explain how muscle strength and gait assessed in a physical exam correlate with August's ability to walk or stand throughout the workday. (D.I. 12 at 26); *see Foster v. Colvin*, 2015 WL 787617, at *7 (E.D. Pa. Feb. 25, 2015) ("Full muscle strength does not mean Foster could walk, stand, or sit for an extended period of time without experiencing pain, as the ALJ suggests."). The ALJ also fails to reconcile his assessment of August's strength and gait measurements with other objective medical evidence in the record, including MRI results and CT scans revealing degenerative disc disease, disc bulges, and neural foraminal narrowing. (D.I. 16 at 64-65, 68) The record also reflects that no doctor offered an opinion that contradicted Dr. Solomon's opinion. *See Simmonds*, 872 F. Supp. 2d at 358 ("No doctor offered a contrary opinion, or offered any reason to discount [the treating physician's] opinion."). In fact, Dr. Walsh, Dr. Brown, and Dr. Solomon each suggested that August consider surgery after aggressive conservative treatments failed, even though "[s]urgery is the last resort." (D.I. 15 at 28; *see also* D.I. 14 at 22, 24-25, 46)

Although the ALJ need not credit a treating source's opinion on the ultimate issue of employability, which is a matter reserved to the Commissioner, *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011), the opinions at Exhibit 13F are medical opinions that offer more than a conclusory assessment of whether August is disabled, *see* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical . . . restrictions."). In particular, Dr. Solomon opined that August's pain is exacerbated by standing and walking as a result of the many years August spent working on his feet as a hairdresser. (D.I. 16 at 29) As a result, Dr. Solomon advised August to limit the amount of time spent standing and walking to maintain the improvements August gained from his back surgery. (*Id.*) This medical opinion regarding August's physical ability to stand and walk does not invade the province of the Commissioner on the issues of employability or disability. *See Wright v. Colvin*, 2016 WL 446876, at *15 (M.D. Pa. Jan. 14, 2016) (stating that 20 C.F.R. § 404.1527(d)(1) does not apply to treating source medical opinions). Because the ALJ discounted all medical opinion evidence, the RFC assessment was silent as to August's capacity to stand, walk, or sit, and the VE opined that August could perform his past work as a hairdresser.

On remand, the ALJ must carefully explain the weight given to the treating source opinions and the reasons for such weight consistent with the applicable regulations in accordance with the foregoing analysis. *Gonzalez*, 537 F. Supp. 2d at 659-60, 664.

### 2. Credibility assessment

August next argues that the ALJ erred by not considering his long work history in the credibility assessment. (D.I. 21 at 18-19) In response, the Commissioner contends that the ALJ satisfied the requirement to consider August's work history by "stat[ing] that he considered all of the factors in Social Security Ruling 16-3p for assessing Plaintiff's allegations, which includes a claimant's work history." (D.I. 23 at 8)

The record reflects that August worked for more than thirty years as a hairdresser. (D.I. 12 at 163-64) The ALJ's suggestion that he considered the evidence "based on the requirements of 20 CFR 404.1529 and SSR 16-3p" is not substantiated by any specific acknowledgement of

August's work history in the balance of the decision. (*Id.* at 23) On remand, the ALJ shall weigh August's work history as one of the requisite factors in assessing August's credibility.

## V. CONCLUSION

For the foregoing reasons, August's motion for summary judgment is GRANTED, (D.I. 20), and the Commissioner's cross-motion for summary judgment is DENIED, (D.I. 22). This matter shall be remanded for further proceedings. An Order consistent with this Memorandum Opinion shall issue.

Dated: September 29, 2021

                                                                   Sherry R. Fallon
                                                                   United States Magistrate Judge